**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **ALFRED P. CERNA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 1:10-cv-188** |
| | ) | |
| **PRESTRESS SERVICES** | ) | |
| **INDUSTRIES LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Alfred P. Cerna filed suit on May 24, 2010, alleging that the Defendant Prestress

Services Industries, LLC, discriminated against him on the basis of his Mexican national origin

in violation of 42 U.S.C. § 2000(e) and 42 U.S.C. § 1981 when it terminated his employment on

October 6, 2008. (Docket #1.)  Prestress answered the complaint on July 29, 2010, and alleged

that Cerna's claim is barred by a binding arbitration agreement that requires him to request

arbitration of his claim within one year. (Docket # 13.)  Prestress also counterclaimed for a

declaratory judgment that the arbitration agreement is enforceable and for an injunction to

prevent Cerna from now belatedly attempting to arbitrate his claim.

Prestress has now moved for summary judgment on Cerna's claim and its own

counterclaim. (Docket # 18.)

For the following reasons, Prestress's motion for summary judgment will be GRANTED.

## II. FACTUAL BACKGROUND

Cerna was hired as a production laborer for Prestress on May 12, 2008. (Amy Pyne Aff., Ex. A, ¶ 4.) Upon hiring, Prestress provided Cerna (and every new employee) with a copy of the Prestress Services Industries, LLC, Employee Manual. (Ex. A, ¶ 3.)

The Employee Manual contains the Prestress Arbitration Policy. The Arbitration Policy informs employees that: "[B]y accepting employment or continuing employment with the Company, you are agreeing to submit any such dispute arising out of your employment or the termination of your employment (including, but not limited to, claims of unlawful termination based on . . . national origin . . . ) exclusively to binding arbitration under the Federal Arbitration Act, 9 U.S.C., Section 1." (Prestress Arbitration Policy, Ex. B, p. 7.)

The Arbitration Policy further reiterates that: "[t]he claims covered by this Arbitration Policy include: any claims or controversies ('Claims') either the Company may have against you or you may have against the Company or against its officers, Managers, employees or agents in their capacity as such. The claims covered include, but are not limited to claims for . . . discrimination (including but not limited to . . . national origin). . . ." (Ex. B, p. 7.) Employees are expressly informed, however, that the Arbitration Policy does not prevent them from filing a complaint with a civil rights agency, such as the Equal Employment Opportunity Commission ("EEOC").

Cerna was also told that "[b]y accepting or continuing employment with the Company, you are indicating your understanding and agreement that arbitration is the exclusive remedy for all disputes arising out of or related to your employment with the Company and you agree to waive all rights to a civil court action regarding your employment and the termination of your

employment with the Company; only the arbitrator, and not a judge nor a jury, will decide the dispute." (Ex. B, p. 7.)

The Arbitration Policy contains a Common Questions and Answers section (the "FAQ Section"). (Ex. B, pp. 8-10.)  The FAQ Section further reiterates the scope of the Arbitration Policy.

> **Q. What kind of claims does the agreement cover?**
>
> A. All legal claims of any kind, except workers compensation claims, unemployment claims, complaints to the EEOC or similar state or local agency or claims by the Company that an employee has violated an agreement relating to unauthorized use or disclosure of trade secrets or confidential information, or violation of a non-competition provision.

(Ex. B, p. 8.)

The FAQ Section also confirms that Prestress must arbitrate any claims it may have against its employees.

> **Q. Is the Company also bound by these arbitration procedures?**
>
> A. Absolutely.  The Company is a binding arbitration company.  This means that if the Company has any claims against its employees, or ex-employees, it must also use binding arbitration to resolve these disputes.

(*Id.*)

Employees are reminded that they will have the same remedies in arbitration as in court.

> **Q. Can an arbitrator award the same kind of damages that a court or jury could?**
>
> A. Yes, the law and remedies, including punitive damages, will be exactly the same as they would be in court.

(Ex. B, p. 9.)

Finally, the FAQ Section confirms that Prestress will bear the cost of the arbitrator's fees.

> **Q. When do I have to pay part of the arbitrator's fee?**
>
> A. You do not "have" to pay the fee.  If you believe that an arbitrator paid entirely by the Company will be impartial, and you further agree to waive any objection or complaint regarding partiality, the Company will agree to pay the arbitrator's full fee.  However, if you believe that an arbitrator paid entirely by the Company might not be objective or impartial, you may choose to split the fee with the Company.  Keep in mind that if you choose to split the arbitrator's costs and you win your case against the Company, the Company will reimburse you for your share of the arbitrator's costs.

(Ex. B, p. 10.)

On March 28, 2008, Cerna signed the "Receipt and Acknowledgment of the Prestress Services Industries, LLC Revised Employee Manual," thereby affirming that he had "received and read a copy of the Company Employee Manual." (Receipt and Acknowledgment, Ex. D.)  Cerna further acknowledged that "I have read and understand the Arbitration Policy contained in this Employee Manual and I agree to abide by the policy." (Ex. D.)

That same day, Cerna also executed the "Acknowledgment of and Agreement with the Arbitration Policy of Prestress Services Industries, LLC." (Acknowledgment and Agreement, Ex. E.)  In the Acknowledgment, Cerna affirmed that:

> My signature on this document acknowledges that I understand the Arbitration Policy and agree to abide by its conditions.  I also acknowledge that I understand my employment is at-will and may be terminated at any time, with or without reason, by either the Company or me.  I further agree that, in accordance with the Company's Arbitration Policy, that I will submit any dispute (including but not limited to my termination) arising under or involving my employment with the Company to binding arbitration within one (1) year from the date the dispute first arose.  I agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment with the Company or the termination of that employment. The Company recommends that I obtain, and I agree that I will be entitled to legal representation during arbitration, the cost of which I will bear unless the arbitrator awards otherwise.  I further understand that I will be responsible for half of the cost of the arbitrator and any incidental costs of arbitration, unless I elect to have the Company

4

pay the full costs for the arbitrator and incidental costs. I understand that the arbitrator may award any relief that a federal court of competent jurisdiction in conformity with applicable law may award. I further understand that, notwithstanding anything to the contrary in the Employee Manual, the Company may not change any of the terms of the current Arbitration Policy as it applies to me without my written agreement.

(Ex. E.)

Less than five months after his hire, Cerna was terminated for insubordination on October 6, 2008. (Ex. A, ¶ 4.) Cerna filed an EEOC Charge of Discrimination against Prestress on February 11, 2009, and the EEOC issued him a Notice of Right to Sue letter on February 24, 2010. (Compl. ¶ 3.) On May 24, 2010, Cerna filed suit in state court, alleging that Prestress discriminated against him on the basis of his national origin. (Compl. ¶ 6.)

Prestress removed the case to this Court on June 11, 2010. (Docket # 2.) On July 29, 2010, it filed its Answer and Counterclaim, asserting that Cerna was required to arbitrate his claim. Prestress filed this motion for summary judgment on November 30, 2010, asking the Court to declare the Arbitration Policy enforceable, to dismiss Cerna's claim because he failed to request arbitration within one year, and to enter an injunction preventing him from belatedly attempting to arbitrate his claim. (Docket # 18.)

## III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst*

*Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

### A. The Court Does Not Need to Refer Any Part of the Policy to the Arbitrator

As a preliminary matter, the Court must address what parts of the Arbitration Policy it may rule on itself and what parts, if any, must be referred to the arbitrator. In *Howsam v. Dean Witter Reynolds, Inc*., the Supreme Court reiterated that, absent an agreement between the parties to the contrary, the court, not the arbitrator, should decide substantive questions of arbitrability. 537 U.S. 79, 83-86 (2002). Accordingly, the Court will consider whether the arbitration agreement is an enforceable contract and whether parties have agreed to arbitrate a particular dispute. *Granite Rock Co. v. Int'l Broth. of Teamsters*, 130 S.Ct. 2847, 2850-51 (2010); *Howsam*, 537 U.S. at 83-86; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

In *Howsam*, however, the Court also stated that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide. So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." 537 U.S. at 84 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 24-25 (1983)). As will be discussed, Cerna claims

that Prestress waived its right to arbitration through its conduct in this litigation. Relying on *Howsam*, Cerna argues that if the Court finds the Arbitration Policy enforceable, it must nevertheless refer the question of waiver to the arbitrator.

Read in isolation, *Howsam* appears to require the arbitrator, and not the Court, to decide whether Prestress waived its right to arbitration. "Properly considered within the context of the entire opinion, however . . . the [*Howsam*] Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration, such as the NASD time limit rule at issue in that case, and not to claims of waiver based on active litigation in court." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007). *See also JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) (concluding that *Howsam* did not disturb the traditional rule that the court decides questions of waiver through litigation conduct); *Marie v. Allied Home Mortgage*, 402 F.3d 1, 13-14 (1st Cir. 2005) (same).

Post-*Howsam*, the Seventh Circuit Court of Appeals has continued to decide questions of waiver through litigation conduct without referring the issue to the arbitrator. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561-62 (7th Cir. 2008); *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs,* 422 F.3d 522, 527 (7th Cir. 2005); *Sharif v. Wellness Intern. Network, Ltd.*, 376 F.3d 720, 726-27 (7th Cir. 2004). Accordingly, this Court will follow the Seventh Circuit and the vast majority of other courts that have addressed the issue,[1] and will itself consider Cerna's argument that Prestress waived its right to arbitration

---

[1] *See, e.g.*, *Zimmer v. Cooperneff Advisors, Inc.*, 523 F.3d 224, 231 (3d Cir. 2008); *Ehleiter*, 482 F.3d at 217-18; *Marie*, 402 F.3d at 13; *Blanco v. Sterling Jewelers Inc.*, No. 09-cv-01330, 2010 WL 466760, at *4 (D. Colo. Feb. 9, 2010); *Apple & Eve, LLC v. Yantai N. Andre Juice Co. Ltd.*, 610 F. Supp. 2d 226, 231 (E.D.N.Y. 2009); *Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1014 (D. Minn.2008); *Vega v. Contract Cleaning Maint.*, No. 03 C 9130, 2006 WL 1554383, at *5 (N.D. Ill. June 1, 2006); *Carbajal v. Household Bank, FSB*, No. 00 C 0626, 2003 WL 22159473, at *8 (N.D. Ill. Sept. 18, 2003).

through its litigation conduct.

**B. Cerna's Lawsuit is Barred by the Enforceable Arbitration Policy**

A party seeking to compel arbitration must prove two things. First, it must demonstrate the existence of an enforceable agreement. Second, it must prove that the disputed matter is the type of claim that the parties agreed to arbitrate. *Roddie v. N. Am. Manufactured Homes, Inc*., 851 N.E.2d 1281, 1284 (Ind. Ct. App. 2006); *Safety Nat'l Cas. Co. v. Cinergy Corp*., 829 N.E.2d 986, 1000 (Ind. Ct. App. 2005). If the Court finds that an enforceable arbitration agreement exists and the parties contracted to submit their dispute to arbitration, the court is required by statute to compel arbitration. 9 U.S.C. § 2.

1. *The Arbitration Policy is Enforceable*

Prestress and Cerna entered into an enforceable arbitration agreement. Under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), arbitration agreements are treated as contracts and courts must enforce them according to their terms. 9 U.S.C. § 2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006); *Penn v. Ryan's Family Steak Houses, Inc*., 269 F.3d 753, 758-59 (7th Cir. 2001). Moreover, the FAA "manifests a 'liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20 (1991) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983)).

The enforceability of an arbitration agreement is governed by applicable state contract law—in this case, Indiana. *Penn*, 269 F.3d at 759 (citing *Gibson v. Neighborhood Health Clinics, Inc*., 121 F.3d 1126, 1130 (7th Cir. 1997)); *First Options of Chicago, Inc.*, 514 U.S. at 943. Indiana courts apply ordinary contract principles to arbitration agreements. *Showboat Marina Casino P'ship v. Tonn & Blank Const*., 790 N.E.2d 595, 598 (Ind. Ct. App. 2003);

*Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001). Like other contracts, however, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assoc's, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Under Indiana law, the party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement. *Gibson*, 121 F.3d at 1130 (citing *Wilson Fertilizer & Grain v. ADM Milling Co.*, 654 N.E.2d 848, 849 (Ind. Ct. App. 1995)); *Mislenkov*, 743 N.E.2d at 289.

Prestress argues (and Cerna does not dispute) that the Arbitration Policy is supported by adequate consideration and fairly allocates costs. The parties do cross swords, however, on the question of whether the one-year limitation for requesting arbitration is unconscionable because it amounts to a contract of adhesion.[2]

A contract of adhesion is imposed and drafted by a party of superior bargaining strength, leaving to the other party the mere question whether to accept or reject it. *Sanford v. Castleton Health Care Center*, LLC, 813 N.E.2d 411, 418 (Ind. Ct. App. 2004). A contract of adhesion is not *per se* unconscionable. *Id.* (citing *Pigman v. Ameritech Pub., Inc.*, 641 N.E.2d 1026, 1035 (Ind. Ct. App. 1994). Rather, "a contract is unconscionable if a great disparity in bargaining power exists between the parties, such that the weaker party is made to sign a contract unwillingly or without being aware of its terms." *Id.* (citing *White River Conservancy Dist. v. Commonwealth Eng'rs, Inc.*, 575 N.E.2d 1011, 1017 (Ind. Ct. App. 1991). To be unconscionable, "[t]he contract must be 'such as no sensible man not under delusion, duress or

---

[2] Cerna apparently concedes that he has never requested arbitration.

in distress would make, and such as no honest and fair man would accept.'" *Roddie*, 851 N.E.2d at 1285 (quoting *Progressive Constr. & Eng'g Co. v. Ind. & Mich. Elec. Co.*, 533 N.E.2d 1279, 1286 (Ind. Ct. App. 1989)).  A contract is not unenforceable merely because one party enjoys advantages over another. *Flynn v. AerChem, Inc.*, 102 F. Supp. 2d 1055, 1062 (S.D. Ind. 2000) (citing *Houin v. Bremen State Bank*, 495 N.E.2d 753, 758 (Ind. Ct. App. 1986)).

Perhaps recognizing that a mandatory arbitration agreement is not *per se* unconscionable, *see Koveleskie v. SBC Capital Markets, Inc.*,167 F.3d 361, 365 (7th Cir. 1999) (holding mandatory arbitration of Title VII claims permissible, explicitly disagreeing with the Ninth Circuit, and collecting cases), Cerna focuses his argument on the one-year limitation.  He cites two cases from the Ninth Circuit Court of Appeals, *Davis v. O'Lemelveny & Myers*, 485 F.3d 1066, 1076-67 (9th Cir. 2007) and *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003), for the proposition that a mandatory arbitration agreement combined with a one-year limitation is *per se* unconscionable.  Prestress counters with case law from this Circuit where courts have upheld similar contractual limitations on the time to make an arbitration claim or bring a lawsuit. *See Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1205-6 (7th Cir. 1992); *Baumann v. The Finish Line, Inc*., No. 1:08-cv-1385, 2009 WL 2750094, at *4 (S.D. Ind. 2009).

The Supreme Court long ago noted that "a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947).  Furthermore, "[i]t is well established in Indiana that, while not favored, . . . contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time

is afforded." *Summers v. Auto-Owners Ins. Co.*, 719 N.E.2d 412, 414 (Ind. Ct. App. 1999) (quoting *Schafer v. Buckeye Union Ins. Co.*, 381 N.E.2d 519, 522 (Ind. 1978).

In *Taylor*, the Seventh Circuit Court of Appeals, applying Illinois law,[3] held that a six-month contractual limitation on an employee's right to bring a lawsuit under 42 U.S.C. § 1981 was enforceable.[4] 966 F.2d at 1205-6. The Court found that the six month limitation was not against public policy, because the plaintiff could have filed suit immediately and asked for a stay pending the outcome of his EEOC charge. *Id.* at 1206.

Similarly, in *Baumann* the Court applied Indiana law and specifically found a one-year limitation on requesting arbitration in a Title VII case enforceable. 2009 WL 2750094, at *4. Citing *Taylor*, the Court held that "[t]o comply with the limitations provision, [plaintiff] could have either initiated arbitration directly or, in an abundance of caution, filed suit and immediately ask[ed] the court for a stay pending the outcome of arbitration." *Id.*

In the present case, which is factually indistinguishable from *Baumann*, the one-year limitation is reasonable and the Arbitration Agreement is enforceable. Indeed, the Court fails to see how the one-year limitation is, as Cerna puts it, "unfair and oppressive," considering that the statute of limitations under Title VII is effectively 300 days. *See* 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); *Scott v. Coca Cola Enter.*, No 2:05-cv-41, 2005 WL 1661808, at *3 (N.D. Ind. July 15, 2005) (noting that because Indiana is a "deferral state," EEOC charges must be made within

---

[3] In Illinois, as in Indiana, a contractual limitation on the time to sue is enforceable as long as it is reasonable. *1000 Condominium Ass'n v. Carrier Corp.*, 535 N.E.2d 1144, 1147 (Ill. App. Ct. 1989); *Village of Lake in the Hills v. Illinois Emcasco Ins. Co.*, N.E.2d 681, 683 (Ill. App. Ct. 1987).

[4] Cerna argues that *Taylor* is not persuasive authority because it did not involve an arbitration agreement but rather a general limitation on the time to bring suit. The Supreme Court, however, has specifically instructed that a court should not "in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).

300 days) (citing *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 445 (7th Cir. 1994). Here, the arbitration agreement gave Cerna up to one year to seek arbitration and arguably provided a more favorable limitations period. *See Adevereaux v. Sports & Fitness Clubs of Am., Inc.*, No. 3-03-CV-2824, 2004 WL 414896, at \*2 (N.D. Tex. Feb. 17, 2004) (citing *Bowie v. Edison Sec. Corp.*, No. 3-03-CV-2700, 2001 WL 1076128 at \*3 (N.D. Tex. Sept. 11, 2001)).

In a last-ditch effort, Cerna argues that the Court should not enforce the one-year limitation because of "principles of equity." He argues that it would be unfair for the Court to enforce the limitation against him because he filed his EEOC charge within the one-year period and Prestress did not seek arbitration during the EEOC proceedings. This argument fares no better. As will be discussed more thoroughly in Section 3, *infra*, Prestress had no obligation to request arbitration during the EEOC proceedings. Furthermore, as Cerna fails to recognize, the mandatory arbitration and the EEOC charge are not mutually exclusive. That is, Cerna was not required to wait for the EEOC to finish its investigation before requesting arbitration. Indeed, Cerna could have simultaneously filed his EEOC charge and requested arbitration. The fact that Cerna neglected to seek arbitration, apparently through his own negligence,[5] does not render the one-year limitation unenforceable.

---

[5] Unsurprisingly, Cerna now claims that he "does not remember" agreeing to the Policy. He does not, however, contend that he did not actually sign the "Receipt and Acknowledgment" (Ex. D), and the "Acknowledgment and Agreement" (Ex. E), or that his consent was obtained through fraud or duress. Thus, the only fair inference that arises is that Cerna either simply forgot that he previously agreed to arbitration or never read the provision at all. *See DeGroff v. MascoTech Forming Technologies-Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 903 (N.D. Ind. 2001) (enforcing an arbitration agreement and noting that it is a "well-settled proposition of Indiana law that "[someone who] does not read an instrument which he signs is, as a general rule, guilty of negligence. . . ." ) (internal quotations and citations omitted).

*3. The Parties Contracted to Submit This Type of Dispute to Arbitration*

In addition to the Arbitration Policy being enforceable, Prestress and Cerna specifically agreed to arbitrate this type of dispute. "When determining whether the parties have agreed to arbitrate a dispute, [the court applies] ordinary contract principles governed by state law." *Showboat Marina*, 790 N.E.2d at 598; *Mislenkov*, 743 N.E.2d at 289. Any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration, and the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used. *Roddie,* 851 N.E.2d at 1286 (citing *Polinsky v. Violi*, 803 N.E.2d 684, 687 (Ind. Ct. App. 2004)).

"[The court must] read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless." *Whitaker v. Brunner*, 814 N.E.2d 288, 294 (Ind. Ct. App. 2004) (citing *Estate of Penzenik v. Penz Prods., Inc*., 800 N.E.2d 1007 (Ind. Ct. App. 2003)). "[The court] must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict." *Id*. "However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication." *Showboat Marina*, 790 N.E.2d at 598.

Here, the Arbitration Policy informed Cerna that: "[Y]ou are agreeing to submit any such dispute arising out of your employment or the termination of your employment (including, but not limited to, claims of unlawful termination based on . . . national origin . . .) exclusively to binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 1." (Ex. B, p. 7.)

It goes on to reiterate that:

> The claims covered by this Arbitration Policy include: any claims or controversies ('Claims') either the Company may have against you or you may have against the Company or against its officers, Managers, employees or agents in their capacity as such. The claims covered include, but are not limited to claims for . . . discrimination (including but not limited to . . . national origin . . .) and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims for workers' compensation and unemployment compensation. . . . [C]laims that are also excluded from arbitration include . . . claims which are appropriately filed with an administrative civil rights agency such as the Equal Employment Opportunity Commission. . . .

(Ex. B, p. 7.)

Finally, in the Question and Answer Section, the Arbitration Policy again informed Cerna that "[a]ll legal claims of any kind, except . . . complaints to the EEOC or similar state or local agency . . ." must be submitted to arbitration. (Ex. B, p. 8.)

Cerna offers a confusing argument, devoid of any citations to relevant case law, that his claim for national origin discrimination is not within the scope of the Arbitration Policy. Although his position is difficult to decipher, Cerna apparently believes that because the Policy excludes "claims" filed with the EEOC, it must also exclude any corresponding legal "claims"—such as this lawsuit—that could be brought from the same incident.

Prestress responds that the Arbitration Policy clearly includes a lawsuit for national origin discrimination, while preserving an employee's right to file an administrative complaint with the EEOC. Prestress highlights the obligation of the Court to accept an interpretation of the Policy that harmonizes its provisions, rather than places them in conflict, s*ee Whitaker*, 814 N.E.2d at 294, and argues that Cerna's interpretation renders most of the contract language meaningless.

Indeed, Cerna's argument ignores both the unambiguous language of the Arbitration

Policy and controlling case law. The Policy informed Cerna in three separate sections, and in no uncertain terms, that he must submit any claim of national origin discrimination to arbitration. The fact that the Arbitration Policy preserves Cerna's right to file a "claim" with the EEOC does not mean, simply by virtue of the use of the word "claim," that all other legal claims arising from the same incident are similarly excluded from arbitration. To accept this interpretation of the Arbitration Policy would indeed require the Court to disregard the unambiguous contract language and render much of the agreement meaningless. *See Whitaker*, 814 N.E.2d at 294.

Furthermore, courts, including this one, have consistently recognized that an arbitration agreement may limit an employee's ability to file a private judicial action, while still allowing for a complaint to the EEOC. *See Gilmer*, 500 U.S. at 28 (holding that an ADEA claim may be subject to compulsory arbitration, in part, because the employee could still file a claim with the EEOC); *Drewery v. Gen. Elec. Consumer & Indus.*, No. 1:06-cv-220, 2006 WL 2228963, at *4-5 (N.D. Ind. Aug. 3, 2006) (collecting cases where courts have upheld mandatory arbitration of Title VII claims and distinguishing the EEOC claims process); *DeGroff*, 179 F. Supp. 2d at 913 (Cosbey, J.) (discussing *Gilmer* and approving of an arbitration agreement that distinguished between a private judicial action and EEOC claim).

In short, Prestress and Cerna contracted to submit this type of dispute to arbitration. To read the Arbitration Policy any other way would require the Court to disregard the unambiguous language of the contract, controlling case law, and its own precedent.

*4. Prestress Has Not Waived its Right to Arbitration*

In response, Cerna claims that Prestress has waived its right to arbitration through its litigation conduct in this lawsuit and by not requesting arbitration while the EEOC complaint

15

was pending. Prestress argues that it promptly sought to enforce the Arbitration Policy once this lawsuit began and that it had no duty to request arbitration while the EEOC complaint was pending. Prestress's argument is once again correct.

The right to require arbitration may be waived. *Safety Nat'l Cas. Co.*, 829 N.E.2d at 1003-4. A waiver does not need to be in express terms and may be implied by the acts, omissions, or conduct of the parties. *Id.* (citing *Mid-America Surgery Center, LLC v. Schooler*, 719 N.E.2d 1267, 1270 (Ind. Ct. App. 1999); *McNall v. Farmers Ins. Group*, 392 N.E.2d 520, 523 (Ind. Ct. App. 1979).

"In determining if waiver has occurred, courts look at a variety of factors, including the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum." *Finlay Properties, Inc. v. Hoosier Contracting, LLC*, 802 N.E.2d 453, 455 (Ind. Ct. App. 2003). *Compare DeGroff,* 179 F. Supp 2d at 912 (noting the "strong federal policy favoring arbitration" and warning that courts should not "lightly infer" waiver), *and MPACT*, 802 N.E.2d at 910-911 (finding no waiver where defendant requested arbitration in its answer), *with JKL Components Corp. v. Insul-Reps, Inc.*, 596 N.E.2d 945 (Ind. Ct. App. 1992) (refusing to compel arbitration because appellant made no effort to specifically request arbitration at any time before appeal), *and Aetna Cas. & Sur. Co. v. Dalson*, 421 N.E.2d 691, 692-693 (Ind. Ct. App. 1981) (holding plaintiffs had waived their right to arbitrate where they had consistently resisted arbitration and only sought to compel arbitration when an unfavorable judgment was entered against them at trial).

Courts have frequently rejected the argument that a party waives its right to arbitration by

participating in an EEOC investigation or waiting to request arbitration until the EEOC proceedings are complete.  In *DeGroff*, this Court held that the Plaintiff's filing of an EEOC charge did not create a duty for the defendant to request arbitration. 179 F. Supp. 2d at 913.  "[A] delay in instituting arbitration as a result of participation in EEOC proceedings is insufficient to constitute waiver." *Id*. (citing *DiCrisci v. Lyndon Guaranty Bank of New York*, 807 F.Supp. 947, 954 (W.D.N.Y. 1992) ("Mere participation in an action does not constitute a waiver of arbitration when an assertion of the right to arbitrate is made in a timely manner."); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000) (finding defendant was under no obligation to make a pre-suit demand for arbitration)).  *See also Gagliano v. Cytrade Fin., LLC*, No. 09-4185, 2009 WL 3366975, at *4-5 (N.D. Ill. Oct. 16, 2009); *Scaffidi v. Fiserv, Inc.*, No. 05-C-1046, 2006 WL 2038348, at *4 (E.D. Wis. July 20, 2006).

Although the Seventh Circuit Court of Appeals has not yet considered this question, other courts of appeals have held that an employer does not waive its right to arbitrate by failing to raise the arbitration issue with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings. *See, e.g., McNamara v. Yellow Transp., Inc.*, 570 F.3d 950, 952, 957 (8th Cir. 2009); *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 15-16 (1st Cir. 2005); *Brown*, 211 F.3d at 1222-23.

In the present case, Prestress did not waive its right to arbitration, either through its litigation conduct or by not requesting arbitration during the EEOC proceedings.  Cerna filed suit in state court on May 24, 2010, and Prestress removed the case to federal court on June 11, 2010. (Docket ## 1, 2.)  On July 29, 2010, Prestress filed its Answer and Counterclaim, alleging that Cerna was required to arbitrate his claim. (Docket # 13.)  The present motion followed on

November 30, 2010. (Docket # 18.) In short, all activity in this case has so far been dedicated to resolving the arbitration issue and Prestress has consistently asserted its right to arbitration.

Although Cerna believes that Prestress waived arbitration because it first removed the case to federal court, instead of immediately filing a motion to stay or dismiss in state court, the Seventh Circuit Court of Appeals has repeatedly rejected this argument. *See Halim v. Great Gatsby's Auction Gallery, Inc*., 516 F.3d 557, 562 (7th Cir. 2008); *cf. Cabintree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc*., 50 F.3d 388, 391 (7th Cir. 1995) (finding waiver where defendant removed case and participated in the litigation for eight months before seeking arbitration). *See also Underwriting Members of Lloyds of London v. United Home Life Ins*., 549 N.E.2d 67, 71 (Ind. Ct. App. 1990) (finding no waiver because defendant "asserted its right to arbitrate throughout the proceedings").

Furthermore, and despite Cerna's wish to the contrary, Prestress was under no duty to request arbitration while the EEOC proceedings were pending. *See Gagliano*, 2009 WL 3366975, at *4-5; *Scaffidi*, 2006 WL 2038348, at *4; *DeGroff*, 179 F. Supp. 2d at 913. Accordingly, Prestress has not waived its right to require that Cerna arbitrate his claim.

*5. Conclusion*

To summarize, the Arbitration Policy is enforceable and required Cerna to submit his claim of national origin discrimination to binding arbitration within one year of October 6, 2008. Because it is undisputed that Cerna failed to timely request arbitration, the Court will now consider Prestress's request to permanently enjoin Cerna from now, and belatedly, attempting arbitration.

## C. Cerna is Enjoined From Belatedly Pursuing Arbitration

Prestress next asks the Court to permanently enjoin Cerna from attempting to belatedly arbitrate his claim. Cerna did not address Prestress's request for a permanent injunction and apparently concedes that an injunction is warranted if the Court finds the Arbitration Policy enforceable. *See Berry v. Delta Airlines, Inc*., 260 F.3d 803, 810 (7th Cir. 2001) (finding that non-moving party's failure to raise issue in response resulted in waiver); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented in response to summary judgement motions are waived).

Nevertheless, to complete the record, the Court will analyze Prestress's request for a permanent injunction. To obtain injunctive relief, Prestress must show: (1) actual success on the merits; (2) that it does not have an adequate remedy at law; (3) the balance of harms between the parties favors entering the injunction; and (4) entry of the injunction will not harm the public interest. *CFM Majestic, Inc. v. NHC, Inc*., 93 F. Supp. 2d 942, 958-59 (N.D. Ind. 2000) (citing *Chicago Sch. Reform Bd. of Trustees v. Diversified Pharm. Servs. Inc*., 40 F. Supp. 2d 987, 991 (N.D. Ill. 1999). "Irreparable injury" is not an independent element of a permanent injunction, but is merely one basis for showing an inadequate legal remedy. *Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1326 (7th Cir. 1992). As discussed, Prestress has prevailed on the merits and the Court will therefore confine its analysis to the remaining three factors.

To begin, Prestress does not have an adequate remedy at law. Courts frequently recognize that forcing a party to arbitrate a dispute it did not agree to arbitrate constitutes irreparable injury. *See Edward E. Gillen Co. v. Ins. Co. of the State of Penn*., 747 F. Supp. 2d 1058, 1062 (E.D. Wis. 2010); *WFC Commodities Corp. v. Alston*, No. 00 C 0044, 2000 WL

33534178, at *1 (N.D. Ill. Mar. 8, 2000); *Chicago Sch. Reform Bd. of Trustees*, 40 F. Supp. 2d at 996. *See also Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) (finding irreparable injury "by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable"); *McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997) ("If a court has concluded that a dispute is non-arbitrable, prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award."); *PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 515 (3d Cir. 1990); *U.S. for Use & Benefit of Capital Elec. Const. Co., Inc. v. Pool & Canfield, Inc*., 778 F. Supp. 1088, 1092 (W.D. Mo. 1991) ("It would be irrational to hold that there is no irreparable harm in forcing a party to be subjected to the cost and hardship of a meaningless proceeding . . . .").

Here, Prestress and Cerna only agreed to arbitrate claims brought within one year of when the dispute first arose. Cerna's employment was terminated on October 6, 2008—making October 6, 2009, the last date to request arbitration for any claim arising out of that incident. There is no dispute that Cerna did not request arbitration within the time limit and, as the Court has determined, the Arbitration Policy is enforceable. To force Prestress to expend time and money to arbitrate this claim, therefore, after it explicitly agreed to only arbitrate claims brought within one year, would constitute irreparable injury.

Furthermore, the balance of harms favors entering an injunction. Were Cerna to initiate arbitration, Prestress would be required to pay arbitration costs and attorneys' fees defending

itself against a claim that is predestined to fail. Assuming that Cerna would elect to have Prestress pay for the full costs of arbitration, Prestress would need to pay $1,100 in filing fees, $300 per day in hearing fees, hearing room rental, and the arbitrator's expenses, including travel costs. (Ex. C, p. 1-2.) In contrast, "the harm of a permanent injunction to [Cerna] is merely to be held to [his] agreement to arbitrate disputes within the one-year limitations period, and thus does not outweigh the harm done to [Prestress]." *WFC Commodities Corp.*, 2000 WL 33534178, at *1. Accordingly, the balance of harms favors Prestress.

Finally, an injunction will not harm the public interest. Under Indiana law, there is a "very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties" and courts recognize that "it is in the best interest of the public not to unnecessarily restrict peoples' freedom of contract." *Eck & Assoc., Inc. v. Alusuisse Flexible Packaging, Inc*., 700 N.E.2d 1163, 1167 (Ind. Ct. App. 1998) (quoting *Cont'l Basketball Assoc., Inc. v. Ellenstein Enter., Inc*., 669 N.E.2d 134, 139 (Ind. 1996)). Here, since the parties agreed to only arbitrate claims brought within one year, an untimely arbitration attempt would fall outside the scope of the contract; thus, holding the parties to their bargain, and entering an injunction, serves the public interest.

Furthermore, courts have recognized that mandatory arbitration of Title VII claims does not offend public policy. *See Koveleskie*,167 F.3d 361, 365; *Taylor*, 966 F.2d at 1205-6; *Baumann*, 2009 WL 2750094, at *4; *Drewery*, 2006 WL 2228963, at *4-5. Accordingly, the final factor also supports granting the injunction.

All four factors support Prestress's request to permanently enjoin Cerna from belatedly seeking arbitration. Cerna himself never addressed the injunction in his Response Brief and

apparently concedes it is warranted if the Court upholds the Arbitration Policy. Accordingly, Prestress's motion for a permanent injunction is GRANTED.

## V. CONCLUSION

Cerna and Prestress entered into an enforceable arbitration agreement that required Cerna to arbitrate his claim of national origin discrimination within one year of October 6, 2008. Because Cerna failed to request arbitration within the time limit, Prestress's Motion for Summary Judgment on Cerna's claim and its Counterclaim (Docket # 18) is GRANTED. The Clerk is directed to enter judgment in favor of Prestress on its counterclaim and against Cerna on his complaint. Furthermore, Prestress's request for a permanent injunction to prevent Cerna from attempting to belatedly arbitrate his claim is GRANTED.

Accordingly, and for the reasons stated, IT IS HEREBY ORDERED that plaintiff Alfred P. Cerna, his agents, successors, and assigns, and any and all persons acting in concert or participation with him who receive actual notice of this Order, are hereby permanently enjoined and restrained from seeking, requesting, or prosecuting arbitration of the claim of national origin discrimination brought in this lawsuit.


SO ORDERED

May 18, 2011

S/Roger B. Cosbey
Roger B. Cosbey
Magistrate Judge
